UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In re:

LESTER G. HUNT,　　　　　　　　　　　　　　　　　　No. 14-13109 tf13

　　　Debtor.

## OPINION

Before the Court is Debtor's motion to order his mortgage lender to pay more than $67,000 in attorney fees he incurred. The lender objects. Because there is no contractual or statutory basis for the requested relief, and also because the facts do not warrant it, the Court will deny the motion.

I.　　FINDINGS OF FACT[1]

Debtor owns a mobile home and land (the "Property") in Waterflow, New Mexico, an unincorporated town west of Farmington, New Mexico, bordering the Navajo Indian reservation. The Property is encumbered by a mortgage loan that is owned by U.S. Bank, N.A., as trustee of a certain mortgage-backed loan pool. The loan is serviced by Nationstar Mortgage, LLC, as agent for U.S. Bank. Together, U.S. Bank and Nationstar Mortgage are referred to as the "Lender."

In 2012 the Lender filed a foreclosure action on the Property, obtaining a summary judgment on December 4, 2012. The summary judgment, which ruled that the Lender was entitled to enforce the subject note and mortgage, was never appealed.

---

[1] To the extent any finding of fact is construed as a conclusion of law, it is adopted as such, and vice versa. The Court may make additional findings of fact and conclusions of law as it deems appropriate or as may be requested by any of the parties. In making these findings, the Court took judicial notice of the docket. *See St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.*, 605 F.2d 1169, 1172 (10th Cir. 1979) (a court may, sua sponte, take judicial notice of its docket); *In re Mailman Steam Carpet Cleaning Corp.*, 196 F.3d 1, 8 (1st Cir. 1999) ("[t]he bankruptcy court appropriately took judicial notice of its own docket").

Apparently the Property did not go to foreclosure sale. Debtor filed this chapter 13 case on October 20, 2014, at which time he still owned the Property.

Debtor filed a chapter 13 plan on November 3, 2014, and an amended plan on December 18, 2014. Lender and the chapter 13 trustee objected to the amended plan.

Lender filed a proof of claim on January 16, 2015, and filed a stay relief motion on January 26, 2015. At the request of the parties, the Court never set a final hearing on the motion.

On June 18, 2015, the Court entered an order setting deadlines for the parties to attempt to negotiate a loan modification. For reasons that are disputed, the deadlines were not met. The Court never found that a party was in contempt of the order.

Lender denied Debtor's loan modification application in July 2015, based on lack of documentation. On August 17, 2015, Lender offered a trial loan modification to Debtor. He accepted and began making payments. Lender later offered him a permanent loan modification on similar monthly payment terms; Debtor declined the offer because he questioned certain claimed arrearages, costs, insurance premiums, and the like.

Debtor objected to Lender's proof of claim on November 20, 2015, raising similar questions.

The Court confirmed Debtor's amended chapter 13 plan on January 15, 2016, over a year after filing this case. Lender withdrew its plan objection to facilitate confirmation.

Debtor's counsel filed a fee application on January 24, 2016, seeking approval of $2,479 in fees and $228.66 in expenses, to be paid by the estate. Counsel's prior firm also filed a fee application, seeking approval of $6,845.13 in fees.[2] The Court approved both fee applications by

---

[2] When Debtor's current counsel worked at the prior counsel's firm, she billed twice the fees and costs sought in the fee application. Her former firm cut its bill in half, and also applied a $1,850 retainer.

orders entered in March, 2016. These fees are in addition to the $67,000 at issue in the motion now before the Court. Thus, total fees billed by Debtor's counsel in this case, including the fees cut by counsel's former firm, total almost $86,000, plus whatever fees have been billed since September 12, 2016.

The parties agreed to mediate all of their disputes, and did so on May 3, 2016. The result was a fully executed Mediation Agreement, which resolved all disputes other than Debtor's request that Lender be ordered to pay his attorney fees. The Mediation Agreement required the parties to sign a loan modification agreement, which they did (the "LMA"). Under the Mediation Agreement Lender also agreed to pay Debtor's counsel $3,000.

The LMA required a monthly payment similar to the trial loan modification in August, 2015. Under the LMA, Lender agreed to forgive $27,414 in deferred, non-interest bearing principal if Debtor makes timely payments for three years. It has the same interest-bearing capitalized balance of $195,499.12 that Lender previously offered. On May 31, 2016, Lender filed a motion to approve the LMA.

Surprisingly, on the same day Debtor filed a motion to determine the true party in interest, questioning whether Lender owned the subject loan. The motion was at odds with the Mediation Agreement and the state court foreclosure judgment. In the motion, Debtor also asked for Lender to pay $27,163.03 of his attorney fees.

On June 10, 2015, Debtor objected to Lender's motion to approve the LMA, arguing that Lender did not own the loan and had breached the Mediation Agreement.

Debtor filed a motion to enforce the Mediation Agreement on July 31, 2016, followed on August 9, 2015 by the subject motion for attorney fees and costs. The amount of fees sought was not specified.

On August 29, 2016, the Court held a final hearing on Lender's motion to approve LMA, Debtor's motion to enforce Mediation Agreement, and Debtor's motion for attorney fees. At the hearing, Debtor asked for $49,470 in attorney fees, an increase of more than $20,000 over the request made on May 31, 2015.

The Court approved the LMA on August 30, 2016. On the same date the Court ruled that the Mediation Agreement was a binding contract, ordered the parties to take certain actions in furtherance thereof, and denied some of Debtor's requested relief. Finally, the Court ordered Debtor to supplement the record and specifically identify which attorney fees he believes he can recover from Lender, under which legal theory.

Debtor filed a reply on September 12, 2016, identifying the theories that could be the basis of his attorney fee request. Debtor did not specify which fees are awardable under any theory. In the reply Debtor also increased his request to $67,235.34, an increase of about $18,000 since August 29, 2016, and about $40,000 more than requested on May 31, 2016.

On October 18, 2016, Debtor filed a motion to reform the LMA, and also asked the Court to set a final hearing on his objection to the Lender's proof of claim.

## II. DISCUSSION

The sole matter before the Court is whether to order Lender to pay Debtor some or all of the $67,235.34 (and counting) in attorney fees his counsel has billed him for the dispute with Lender.[3] The Court will discuss in turn each of the twelve theories presented by Debtor.

---

[3] This apparently is in addition to the $9,552.79 in attorney fees already approved, and the $3,000 Lender already paid to Debtor's counsel.

A. <u>The Bad Faith Exception to the American Rule</u>.

Under the American Rule, "the prevailing litigant is ordinarily not entitled to a collect a reasonable attorneys' fee from the loser," unless the litigant can point to a fee-shifting statute or contract provision. *Travelers Cas. & Sur. Co. of Am. v. Pac. Gas & Elec. Co.*, 549 U.S. 443, 448 (2007); *Busch v. Hancock (In re Busch),* 369 B.R. 614 (10th Cir. BAP 2007) (American Rule applicable in bankruptcy litigation).

"We have long recognized a common-law exception to the general 'American rule' against fee-shifting – an exception, inherent in the power of the courts that applies for willful disobedience of a court order or when the losing party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.,* 134 S. Ct. 1749, 1758 (2014) (internal quotations omitted). "[A]ttorneys' fees are awarded only when there is 'clear evidence' that challenged actions are taken entirely without color and are pursued for reasons of harassment or delay." *F.D.I.C. v. Schuchmann*, 319 F.3d 1247, 1250 (10th Cir. 2003). *See also F.T.C. v. Kuykendall*, 466 F.3d 1149, 1152 (10th Cir. 2006) ("[T]o fall within the exceedingly narrow bad faith exception to the general rule, there must be clear evidence that the challenged claim is entirely without color *and* has been asserted wantonly, for purposes of harassment or delay, or for other improper reasons.") (internal quotations omitted); *Sterling Energy, Ltd. v. Friendly Nat. Bank*, 744 F.2d 1433, 1437 (10th Cir. 1984) (bad faith exception is drawn very narrowly, may be resorted to only in exceptional cases, and requires a finding of bad intent or improper motive).

Debtor argues Lender acted in bad faith by delaying a loan modification offer and prolonging the modification process; by filing the stay relief motion; by objecting to Debtor's

chapter 13 plan; and by Nationstar holding itself out as a 'secured creditor.' The Court finds that there is no evidence of bad faith on the part of the Lender.

The Lender's positions taken in this case have all been reasonable or defensible. For example, although Lender may have waived some interest, fees, and costs in the LMA, the waiver does not mean that the fees and costs were not properly collectible.

Furthermore, the Court finds there is no evidence of Lender's improper motive or subjective bad intent. At some point negotiations may have broken down between the parties, but the Court does not find that the breakdown was more Lender's fault than Debtor's, or indicates an improper motive. *See F.D.I.C. v. Schuchmann,* 319 F.3d at 1250 (court must find clear evidence of improper motive).[4]

B.  28 U.S.C. § 1927.

28 U.S.C. § 1927 allows a federal court to sanction a party for vexatious litigation:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

Assessing costs and fees under § 1927 is appropriate when an attorney acts "recklessly or with indifference to the law," *Dominion Video Satellite, Inc. v. EchoStar Satellite LLC,* 430 F.3d 1269, 1278 (10th Cir. 2005); when an attorney intentionally acts without a plausible basis, *Steinert v. Winn Grp., Inc.,* 440 F.3d 1214, 1221 (10th Cir. 2006); or when the entire course of the proceedings

---

[4] In a related argument, Debtor asserts that Lender breached the duty of good faith and fair dealing. *See, e.g., Watson Truck & Supply Co. v. Males*, 801 P.2d 639, 642 (N.M. 1990) ("Whether express or not, every contract imposes upon the parties a duty of good faith and fair dealing in its performance and enforcement"). Presumably, Debtor advances this argument because breach of the covenant requires a showing of bad faith, a requirement for invoking the bad faith exception to the American Rule. The Court concludes that the Lender has not breached the implied duty of good faith and fair dealing.

is unwarranted. *Id*. The Court finds that Lender's counsel does not come within any of these grounds. To the extent any questions remain about vexatious litigation, they do not involve Lender's counsel.[5]

C.     Fed. Rule of Bankr. P.[6] 9011.

Bankruptcy Rule 9011 allows the Court to sanction a party or attorney for filing pleadings, motions, or other papers for improper purposes and/or without suitable legal or factual foundation. The procedure for obtaining a sanctions order under Rule 9011 is precise, as delineated in Bankruptcy Rule 9011(c). Debtor has not followed the procedures, so no sanction under Bankruptcy Rule 9011 can be awarded.

Moreover, the imposition of sanctions is discretionary. *See* Bankruptcy Rule 9011(c) ("[T]he court may… impose an appropriate sanction."). The Court declines to award any sanctions under Bankruptcy Rule 9011.

D.     Fair Debt Collection Practices Act (15 U.S.C. § 1692 et seq.).

A section of the Fair Debt Collection Practices Act provides that a debt collector who fails to comply with the act may be liable to the debtor for reasonable attorney fees incurred in "any successful action to enforce" the statutory penalties. 15 U.S.C. § 1692(k). Since the Debtor did not commence an adversary proceeding to enforce the act, the attorney fee provision does not apply.

E.     Equal Credit Opportunity Act (15 U.S.C. § 1691 et seq).[7]

---

[5] Moreover, under Tenth Circuit law, the Court may not impose sanctions under 28 U.S.C. § 1927. *In re Ontiveros*, 2014 WL 347726, at *6 (Bankr. D.N.M.); *In re Courtesy Inns, Ltd., Inc.*, 40 F.3d 1084, 1086 (10th Cir. 1994); *Ackerman v. Novak*, 483 F.3d 647, 652-53 (10th Cir. 2007) (citing *Courtesy Inns* with approval).
[6] Referred to as a "Bankruptcy Rule."
[7] Debtor referred to this statute as the Fair Credit Reporting Act, but that was an error. The Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq., applies to consumer credit reporting agencies for

-7-
Case 14-13109-t13    Doc 201    Filed 12/23/16    Entered 12/23/16 14:04:19 Page 7 of 13

A section of the Equal Credit Opportunity Act provides that a lender who fails to comply with the act may be liable to the borrower for reasonable attorney fees incurred in any successful action for damages or declaratory relief. 15 U.S.C. § 1691e. The Debtor did not bring an adversary proceeding to enforce the act, so the attorney fee provision does not apply.

F.  New Mexico Unfair Practices Act (N.M.S.A. § 57-12-1 et seq.).

A section of New Mexico's Unfair Practices Act provides that a party complaining of a violation of the act who prevails shall be awarded his or her attorney fees. N.M.S.A. § 57-12-10(C). Debtor never sued Lender alleging a violation of the act, so the attorney fee provision does not apply.

G.  The Mediation Agreement.

The Mediation Agreement provides:

> The parties agree that this Agreement is enforceable in Court and the non-prevailing party is responsible for costs and attorney fees if any action is filed to enforce this Agreement.

This fee-shifting provision probably was intended to apply if a state court action or bankruptcy court adversary proceeding was filed, alleging breach of contract. To the extent it could be read to apply to Debtor's motion to enforce the Mediation Agreement, the Court rules that neither party prevailed, so no attorney fees or costs should be awarded.

The term "prevailing party" is not defined in the Mediation Agreement. In interpreting the term "prevailing party" in a New Mexico contract, courts look to New Mexico common law. *See, e.g., U.S. Food Service, Inc. v. Shamrock Foods Co., Inc.*, 246 Fed. Appx. 570, 576 (10th Cir. 2007). Under New Mexico law, "the prevailing party is the party who wins the lawsuit – that is,

---

the most part; there is no private right of action against furnishers of information to consumer reporting agencies.

a plaintiff who recovers a judgment or a defendant who avoids an adverse judgment." *Dunleavy v. Miller*, 862 P.2d 1212, 1219 (N.M. 1993). *See also New Mexico Right to Choose/NARAL v. Johnson*, 986 P.2d 450, 459-60 (N.M. 1999) (neither party entitled to recover costs, because court ruled in favor of each party on one issue); *Hedicke v. Gunville*, 62 P.3d 1217, 1224 (N.M. Ct. App. 2002) ("Prevailing Party is also defined as '[t]he party to suit who successfully prosecutes the action or successfully defends against it, prevailing on the main issue, even though not necessarily to the extent of his original contention.'") (quoting Black's Law Dictionary 1118 (6th ed. 1990)).

Since both parties were ordered to perform, the Court will not award attorney fees. In its order, the Court declined to rule on Debtor's argument at the hearing that there were additional terms not in the Mediation Agreement. The Court ordered Debtor's counsel to provide tax information to Lender. The Court overruled Debtor's request that Lender be ordered to pay for additional services of the mediator. Debtor was not the prevailing party.

H.      Bankruptcy Rule 7054.

Bankruptcy Rule 7054 provides that the Court "may allow costs to the prevailing party except when a statute of the United States or these rules otherwise provide. It is unusual, although not unheard of, to award costs in contested matters. *See, e.g., In re Aviva Gelato, Inc.,* 94 B.R. 622, 624 (9th Cir. BAP 1988). An award lies within the sound discretion of the bankruptcy court, and a trial court has broad discretion to reduce or apportion costs among the parties. *Aviva Gelato,* 94 B.R. at 624. *See also Barber v. T.D. Williamson, Inc.*, 254 F.3d 1223, 1234–35 (10th Cir. 2001) (when a party has been only partially successful, some courts apportion costs, while other courts do not award costs at all).

Here, the Court rules that neither party "prevailed" in the contested matters decided in this case, and that each party should bear its own costs, so no award of costs is appropriate. Alternatively, the Court, in its discretion, declines to award costs.

I.  Pre-Judgment Interest (NMSA § 56-8-4).

A New Mexico statute provides that interest may be added to a money judgment of up to ten percent from the date the complaint is served. N.M.S.A. § 56-8-4(B). The Court concludes that this statute does not apply to the contested matters at issue. In the alternative, the Court rules that, if the statute does apply, the Court in its discretion determines that pre-judgment interest should not be awarded.

J.  The Mortgage.

The mortgage on the Property contains provisions allowing the Lender to recover reasonable attorney fees in certain circumstances. There is no similar provision giving the Debtor the right to recover his attorney fees. While the Court might have the authority to prevent enforcement of the attorney fee provision because of unconscionability, *see, e.g., State ex rel. King v. B&B Investment Group, Inc.,* 329 P.3d 658, 675 (N.M. 2014), no applicable law would allow the Court to convert the unilateral provision into a bilateral one. The case Debtor cited in support of his argument, *In re Penrod*, 802 F.3d 1084 (9th Cir. 2015), was based on a California statute providing such relief. 802 F.3d at 1087 (citing and quoting Cal. Civ. Code § 1717(a)). No similar statute applies in this case.

K.  § 105 Contempt Sanctions.

Debtor next asks that the requested attorney fees be awarded pursuant to the Court's inherent power to sanction parties for contempt of Court. "To be held in contempt, a court must find the party violated a specific and definite court order and the party had notice of the order." *In*

-10-
Case 14-13109-t13    Doc 201    Filed 12/23/16    Entered 12/23/16 14:04:19 Page 10 of 13

*re Lucre Mgmt. Grp., LLC*, 365 F.3d 874, 875 (10th Cir. 2004) (internal quotation omitted). "Whether to impose civil contempt sanctions falls within the Court's discretion." *In re Potter*, 2008 WL 1777843, at *2 (Bankr. D.N.M.) (citing *In re Armstrong,* 304 B.R. 432, 435 (10th Cir. BAP 2004)). The Court has never held Lender in contempt of court. In fact, the only time Debtor asked the Court to hold Lender in contempt, i.e., with his August 3, 2015, motion, the Court declined to do so. The Court therefore will not award contempt sanctions. If the Lender violated a Court order, the Court in its discretion declines to impose sanctions to punish the violation.

L.  Discovery Sanctions (Bankruptcy Rule 7037)

Finally, Debtor asks for the attorney fee award as a discovery sanction. Bankruptcy Rule 7037 requires the Court to award attorney fees if a motion to compel discovery is granted or if the disclosure or requested discovery is provided after the motion was filed. Fed. Rule Civ. P. 37(a)(5)(A). Here, however, no such motion has ever been granted, and no hearing was held or evidence presented to allow the Court to make the findings required under Fed. Rule Civ. P. 37(a)(5)(A).[8] No discovery sanctions are required or indicated.

The extent of litigation that has occurred over Debtor's $223,000 home mortgage is extraordinary. The Court cannot tell for certain who is to blame for the excessive litigation, but some of the fault must be laid at the feet of Debtor's counsel. She has diligently represented her client, to be sure, but the Court has formed the distinct impression that the result achieved (a loan modification agreement) could have been accomplished much more easily and cheaply had Debtor's counsel approached the matter differently. Of particular note are the following:

---

[8] Although a preliminary hearing was held on the motion to compel, a stipulated order was subsequently entered vacating final hearings pending mediation. The parties never sought to reset the hearing.

-11-
Case 14-13109-t13    Doc 201    Filed 12/23/16    Entered 12/23/16 14:04:19 Page 11 of 13

- Within days after signing a Mediation Agreement, Debtor's counsel filed a motion to determine whether the Lender was the real party in interest;

- Debtor's counsel refused to provide tax identification information to the Lender, needed so the Lender could pay her the $3,000 required under the Mediation Agreement. The refusal was not justified;

- Debtor's counsel filed the motion for attorney fees and costs without citing to, or apparently thinking about, any basis in law or contract for such an award. Further, she did not state the amount of fees sought in her motion filed August 9, 2016;

- After the final hearing on the attorney fee motion, the Court ordered Debtor's counsel to specifically identify which fees are recoverable under which legal theory. She came up with the legal theories discussed above, but did not identify which fees are recoverable under which theory. This failure warrants summary denial of the fee request; and

- Nothing Debtor's counsel settles ever seems to stay settled. She settled the objection to Lender's proof of claim, but now asks the Court to set the claim objection for final hearing. She negotiated the LMA, but now seeks to reform it. She signed the Mediation Agreement but immediately challenged Lender's ownership of the subject note and mortgage.

In addition, the jump in claimed fees from $27,000 on May 31, 2016 (after the matter had been settled!) to approximately $67,000 on September 12, 2016 is remarkable. Equally remarkable are counsel's total billings to Debtor (more than $86,000 through September 12, 2016, although about $6,500 was written off by counsel's former firm).

III.    CONCLUSION

Debtor has not established any legal basis for the Court to order Lender to pay him for any of the attorney fees he has been billed by his counsel. His motion therefore will be denied. A separate order will be entered.

_____
Hon. David T. Thuma
United States Bankruptcy Judge

Entered: December 23, 2016

Copies to:

Deborah DeMack
9400 Holly Ave. NE, Bldg. 4
Albuquerque, NM 87122

Jason Bousliman
5801 Osuna Rd. NE, Suite A-103
Albuquerque, NM  87109

Kelley Skehen
625 Silver SW, Ste. 350
Albuquerque, NM 87102